IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CV-144-FL

| | |
|---|---|
| BETTIE M. BRITT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **MEMORANDUM AND RECOMMENDATION** |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings. The action seeks judicial review of the Commissioner's denial of the plaintiff's application for disability insurance benefits. After a thorough review of the record and consideration of the briefs submitted by counsel, this court recommends denying the plaintiff's motion for judgment on the pleadings and granting the defendant's motion for judgment on the pleadings.

## STATEMENT OF THE CASE

The plaintiff filed an application for disability insurance benefits on June 14, 2002. The plaintiff claimed that she became disabled on March 1, 2001, due to leg and back pain. The plaintiff's claims were denied initially and at the reconsideration level. A hearing was held before an Administrative Law Judge (ALJ), and a decision was issued denying the plaintiff's claim on July 23, 2004. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. The plaintiff requested review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## COURT'S DISCUSSION

### I. The Standard of Review

The scope of judicial review of a final decision regarding disability benefits under Social Security Act, 42 U.S.C. § 405(g), is limited to determining if substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2005). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). The court may not substitute its judgment for that of the Commissioner if the Commissioner's decision is supported by substantial evidence. See Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992).

This court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and

2

416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairments; if so, the claim is denied. However, if the claimant cannot perform past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. At step five, the Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, the plaintiff alleges in her brief that the ALJ committed error by: (1) rejecting, without persuasive reasons, the medical opinion of the plaintiff's treating physician; (2) failing to obtain from a medical expert an opinion as to whether the plaintiff's severe degenerative disease met or equaled Listing 1.04; and (3) finding that the plaintiff was capable of performing her past relevant work. For the reasons set forth below, this court disagrees.

3

## II. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that the plaintiff had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. Then, the ALJ proceeded to step two to determine whether the plaintiff had a severe impairment or combination of impairments which significantly limited her from performing basic work activities. The ALJ found that the plaintiff had the severe impairment of degenerative disc disease. However, at step three the ALJ determined that the plaintiff's impairments, or a combination of impairments, were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Next, the ALJ determined the plaintiff's RFC by considering all of the plaintiff's subjective complaints and, finding them not persuasive, determined that she had the ability to perform sedentary work activity on a regular and sustained basis. Finally, at step four, the ALJ determined that the plaintiff could return to her past relevant work as a secretary and bookkeeper.

## III. The Plaintiff's Testimony at the Administrative Hearing

The plaintiff testified at a hearing held on July 1, 2004. (R. 387). The plaintiff said that she was born on August 27, 1943, was married, and lived with her husband. (R. 388-389). The plaintiff held a 12th grade education and had completed some courses at a technical college. (R. 389). The plaintiff further testified that she held a "degree in floral arrangement." Id. The plaintiff held a drivers license and drove her car two or three days each week. Id. She read the newspaper every day. Id. As of the date of the hearing, the

4

plaintiff testified that she had no source of income and was not employed. (R. 389-390). She last held employment at JL Britt Electric in March, 2001 as a bookkeeper and secretary. (R. 390). According to the plaintiff, she "typed, filed, r[a]n the computer, r[a]n errands, [and] picked up parts." Id.

When asked about her medical providers, the plaintiff said that she had seen Dr. Towten, Dr. Darien, Dr. Cats, and Dr. Garcia. (R. 392). She was being medicated with estrace, diavan, lovoxil, paxil, naprosyn, and darvocet. (R. 392-393). The plaintiff said that she was not suffering from any side effects. (R. 393). According to the plaintiff, she was disabled because she could "not sit at a desk and hold down a full-time job." Id. The plaintiff said that pain in her back resulted in her inability to sit for long periods of time. (R. 394). The plaintiff's back required her to "get up and walk around" and "lay down every day ... two or three times a day." Id. The plaintiff said that she suffered from pain in her back 24 hours a day. Id. The plaintiff further testified that she could not walk for long distances without having to sit down. (R. 395). The plaintiff admitted that she went shopping, prepared meals, made the bed, "vacuumed spots," did the laundry, and picked up things at her home. Id. The plaintiff also said that she attended church twice a week and exercised at a gym on a regular basis. (R. 396-397). The plaintiff said that due to her back condition she did not think that she could return to her past relevant work as a secretary and bookkeeper. (R. 400-401).

### IV. The Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer Little testified as a vocational expert (VE) at the administrative hearing. (R. 401). The VE testified that she had a background in vocational evaluation and rehabilitation counseling. Id. According to the VE, the plaintiff's past training and work

5

experience is identified as: "[s]ecretary, 201.362-014, sedentary, SVP of 6. And bookkeeper, 210.382-014, sedentary, SVP of 6." (R. 402).

## V.  Analysis of the Plaintiff's Arguments

### A.  The plaintiff's argument that the ALJ erred by rejecting, without persuasive reasons, the medical opinion of the plaintiff's treating physician

In her first argument, the plaintiff contends that the ALJ erred by rejecting, without persuasive reasons, the medical opinion of the plaintiff's treating physician. Specifically, the plaintiff argues that the ALJ failed to give appropriate weight to the opinion of Dr. T. Craig Derian that the plaintiff was not capable of continuous, substantial gainful employment. This court finds the plaintiff's first argument to be unpersuasive.

Under the Commissioner's regulations, controlling weight is given to the opinion of a treating source on the issues of the nature and severity of an impairment if it is well supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1995). A treating source's opinion does not automatically become the opinion of the ALJ. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

In this case, the record reflects that the ALJ considered Dr. Derian's medical opinion. (R. 18-21). The ALJ elected not to give Dr. Derian's opinion that the plaintiff was disabled controlling weight. (R. 20). According to the ALJ, such a conclusion was

6

inconsistent with Dr. Derian's treatment notes. As stated by the ALJ in his decision:

> As late as May 2003, [Dr. Derian] reported that the [plaintiff] was smiling and cheerful and moved easily from a sitting to a standing position. Straight leg raising was also negative bilaterally and strength was 5/5 in the lower extremities. The [plaintiff] had also reported sliding down a slide that she had recently installed for her grandchildren. Even in his March 2004 examination, the [plaintiff's] leg raising produced some back pain but full knee extension was possible while sitting. Strength was also reported as 5/5 in the lower extremities. Dr. Derian also stated that the [plaintiff] appeared to be capable of performing part-time, light-duty work with lifting no more than 10 pounds and allowed the sit/stand option, avoiding activities that would aggravate her symptoms.

(R. 20-21, 161-165, 361-367). According to the ALJ, other evidence in the record also undermined Dr. Derian's opinion that the plaintiff was disabled. For instance, the plaintiff testified that she went shopping, prepared meals, made the bed, "vacuumed spots," did the laundry, picked up things at her home, attended church twice a week, and exercised at a gym on a regular basis. (R. 19-20, 395-397). In light of the above, it is the opinion of this court that the ALJ's treatment of Dr. Derian's opinion that the plaintiff was disabled did not constitute error. The plaintiff's first argument is therefore without merit, and should be rejected.

### B. The plaintiff's argument that the ALJ erred by failing to obtain from a medical expert an opinion as to whether the plaintiff's severe degenerative disease met or equaled Listing 1.04

In her second argument, the plaintiff contends that the ALJ erred by failing to obtain from a medical expert an opinion as to whether the plaintiff's severe degenerative disease met or equaled Listing 1.04. The plaintiff bases her argument on the plaintiff's assertion that "the evidence raised the reasonable possibility that [the plaintiff] met or equaled Listing 1.04." (Plaintiff's Brief at 8). This court finds the plaintiff's second argument to be without

merit.

The Fourth Circuit has held that the ALJ has a duty to explore all relevant facts and to inquire into the issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the plaintiff when that evidence is inadequate. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986); Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981). The ALJ has the further duty to identify the "relevant listed impairments" and to compare each of the listed criteria to the evidence of the plaintiff's symptoms. Cook, 783 F.2d at 1173. Such a duty does not exist, however, if there is not a reasonable possibility that the plaintiff's impairments meet or equal a listed impairment. Id.

In this case, the plaintiff contends that her severe degenerative disease met or equaled Listing 1.04.[1] The introduction to the musculoskeletal disorder category of impairments, among which is Listing 1.04, provides that a claimant must suffer from "loss of function" in order to qualify for benefits. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00. Specifically, the regulations provide:

> [r]egardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as an inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment. The inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months.

Id.

---

[1] Notably, it is apparent that neither the plaintiff nor any of her medical providers contended prior to this appeal that the plaintiff's condition met or equaled one of the listed impairments.

The inability to ambulate effectively is defined in the regulations as "an extreme limitation of the ability to walk ... that interferes very seriously with an individual's ability to independently initiate, sustain, or complete activities." Id. To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. Id. In the opinion of this court, there is overwhelming evidence in the record to support a finding that the plaintiff was able to ambulate effectively. For instance, in 2001 the plaintiff was permitted to engage in moderate activity and was advised to avoid heavy lifting for one day. (R. 294-295). From November 2001 until January 2002, after several MRIs and largely normal examination findings, Dr. Datz saw no inability to walk. (R. 99-108, 291-293, 317-321). In January 2002, Dr. Lacin noted no inability to walk. (R. 97-98, 315-316). In February 2003, Dr. Derian recorded that the plaintiff ambulated normally and prescribed walking. (R. 363-365). Finally, the plaintiff testified that she lived a relatively active lifestyle in which she "walk[s] in place" at a gym roughly three times a week. (R.397-398).

The inability to perform fine and gross movements effectively is defined in the regulations as "an extreme loss of function of both upper extremities; i.e., an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Id. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Id. Nothing in the record suggests that the plaintiff suffered from extreme loss of function of both upper extremities. On the contrary, the plaintiff admitted that she went shopping, prepared meals, made the bed, "vacuumed spots," did the laundry, and picked up things at her home. Id. The plaintiff also said that

9

she drove her car two to three days each week and exercised at a gym on a regular basis. (R. 389, 396-397).

After reviewing the record and the briefs submitted by counsel, this court finds that substantial evidence supports a conclusion by the ALJ that there was not a reasonable possibility that the plaintiff's impairments met or equaled the requirements of Listing 1.04. Accordingly, the ALJ did have a duty to identify Listing 1.04 in his decision, or to compare each of the listed criteria to the evidence of the plaintiff's symptoms. See Cook, 783 F.2d at 1173. Nor, as argued by the plaintiff, did the ALJ have a duty to obtain from a medical expert an opinion as to whether the plaintiff's severe degenerative disease met or equaled Listing 1.04. Id.

### C. The plaintiff's argument that the ALJ erred by finding that the plaintiff was capable of performing her past relevant work

In her third argument, the plaintiff contends that the ALJ erred by finding that the plaintiff was capable of performing her past relevant work. Essentially, the plaintiff's third argument can be broken down into two sub-parts. First, the plaintiff argues that the ALJ's finding that the plaintiff could perform a wide range of sedentary work entailed a significant erosion of the sedentary occupational base and, therefore, required the ALJ to develop more vocational evidence about the occupational basis. Second, the plaintiff argues that the ALJ inadequately explained the comparison of the plaintiff's RFC and the requirements of the plaintiff's past work. This court finds neither sub-part of the plaintiff's third argument to be persuasive.

The Social Security Act provides that a claimant is disabled if the claimant has a physical or mental impairment of such severity that she is not only unable to do her

10

previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423 (d)(2)(A). In this case, the ALJ found that the plaintiff could return to her past relevant work as a bookkeeper and secretary. The ALJ concluded that the plaintiff therefore failed to carry her burden at step four of the sequential evaluation process, and was therefore not disabled.

The plaintiff argues that the ALJ's finding that the plaintiff could perform a wide range of sedentary work entailed a significant erosion of the sedentary occupational base and, therefore, required the ALJ to develop more vocational evidence about the occupational basis. The plaintiff's contention is in conflict with the applicable regulations. According to 20 C.F.R. § 404.1560 (b)(3), if the ALJ finds that the plaintiff has the RFC to do her past relevant work, the ALJ will determine that the plaintiff can still do her past relevant work and is not disabled. It is not required that an ALJ "consider [a claimant's] vocational factors of age, education, and work experience or whether [a claimant's] past relevant work exists in significant numbers in the national economy." Id. In the opinion of this court, the vocational evidence about the occupational basis was sufficiently developed by the ALJ.

The plaintiff further argues that the ALJ inadequately explained the comparison of the plaintiff's RFC and the requirements of her past work. However, after reviewing the record and the briefs submitted by counsel, this court is satisfied with the approach taken by the ALJ. The record reflects that the ALJ considered the work that the plaintiff had performed during the relevant time period. (R. 21, 65-66, 390). The ALJ obtained VE testimony about the plaintiff's past type of work, and determined that it required no more

11

than sedentary exertion. (R. 21, 402). Finally, the ALJ considered on the plaintiff's testimony about her past work, and relied on the plaintiff's testimony that her past work required lifting no more than ten pounds and permitted frequent position changes. (R. 20, 390-391).

## CONCLUSION

Because there is substantial evidence to support the findings of the ALJ, the court **RECOMMENDS** that the plaintiff's motion for judgment on the pleadings be **DENIED**, the defendant's motion for judgment on the pleadings be **GRANTED**, and the final decision of the Commissioner denying benefits be upheld. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days after receiving it to file written objections. Failure to file timely written objections bars or may bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

This 8th day of January, 2007.

DAVID W. DANIEL
United States Magistrate Judge